Joined by Judge Clement and Judge Elrod. We've got three cases to be argued. We'll probably hear the first two and then take a little short break before we do the third case. The rules are pretty straightforward. Lately, it seems to be make sure you stay in the microphone so you can be heard. We record these and if you get away from the mic, it gets tough to hear you. The only other rule is just, you know, if you get to a yellow light and you're still on point one, if you have any shots at hitting some other point, it might be a good point to shift gears. And lastly, just the red light does not save you from the court's questions. So, you know, we have questions, you have to answer them and that helps us out a lot. All right, with that, we'll call the first case. Barrash v. American Association of Neurological Surgeons. Mr. Bilofsky, is that correct? Yes, Your Honor. May it please the court. I represent Dr. J. Martin Barrash, the plaintiff and appellant in this case. This appeal presents two issues. The first is the extent to which a remedy can be awarded to a member of a private association once it is determined that the association has violated the member's due process rights. The second issue is whether Texas law continues to recognize a breach of contract claim by a member against a private organization. Turning to the due process claim first. In this case, the district court found that Dr. Barrash had established an impairment of a property or other valuable right, which is a prerequisite for a due process claim. It found that the AANS failed to provide Dr. Barrash with due process when it censured him for engaging in what it termed improper advocacy. And the district court awarded Dr. Barrash equitable relief for that due process violation. The AANS did not appeal any portion of the district court's rulings and thus the only question to be decided with respect to the due process violation is whether the district court should have vacated the entire censure instead of just part of it. These issues, I think, are governed by the principles employed by this court's 1977 decision in Hatley versus American Quarter Horse Association. In that case, the court awarded broad equitable relief after finding that a private organization had violated a member's due process rights. In that case, the court said, and I'm quoting, the conclusion is fatally tainted by the means utilized to attain it. That's at page 655 of 552 absecond. The same is true in this case. The conclusion that Dr. Barrash should be censured at all is fatally tainted by the means utilized to attain it. We've already established that his due process rights were violated, the district court so held. The only question is whether or not the entire censure should be vacated instead of part of it. Now the district court determined that there would be no way to tell whether they would have given the same censure, said it was too wrapped up together. Didn't the district court say something about that? So it wouldn't be worthwhile to send it back to the district court to have a hearing or trial on whether they would have awarded the same censure. Well, Your Honor, the district court. This is a sort of friendly question. The district court bifurcated the two grounds for censure and attempted to evaluate them separately, but that's not what the AANS did. Right, but what I'm saying is that if the AANS bore the burden of establishing that they would have given the same penalty, they certainly haven't shown that it was harmless, that they would have given the same penalty. They haven't established that. AANS has not established it? Yes, and it seems that the district court put the burden on your client to establish that he would not have gotten the same censure. What the district court did is it said plaintiff has the burden of proof, and so the plaintiff. Yeah, why does the plaintiff have to show that he would not have gotten the same censure? Why is that the correct allocation of the burden? Well, Your Honor, I have to confess, and the district court was clear in making the same sort of confession. There's no prior case law where a private association has been held to violate due process on one ground and not the other, so we're in sort of uncharted territory, and the district court said, burden's on the plaintiff. Right, but that's what I'm asking. Why should the burden be on the, if we were in a criminal proceeding, or any other type of, you know, where the government bears the burden of establishing something, and they don't establish it, we do a harmless error. They have to show that it was harmless and that it didn't affect. It seems like this is more akin to that situation, and so the burden should be on the other side. I certainly don't disagree with that, and I. But you don't have any authority, or you've not thought of it like this? I don't have any authority one way or the other. I have thought about it, because the district court posed that issue. After the district court ruled on summary judgment, it invited a second round of briefing on the appropriate remedy, and it raised this sort of bifurcation of the two issues questioned. So we, at least below, had an opportunity to review that. What remedy do you seek today? The remedy that we seek for the due process violation is one, to vacate the entire censure instead of part of it, and then to remand the case for further proceedings on the damages that Dr. Behr suffered as a result of the censure. But why shouldn't they have an opportunity to establish an appropriate, see if they could establish that this one was violated, and what? Do you see what I'm saying? If one of the grounds is arguably appropriate, then why shouldn't they have the opportunity to get a redo on that one? Well, I don't disagree with that. I think that there is evidence in the record that both parties cited in their appellate briefs about what has happened in other circumstances where other doctors have been found to not review pertinent medical information. We cite two occasions where the doctors, all they had been found was to having not reviewed medical records and the charges were dismissed. The AANS cites to two cases where arguably the doctors didn't review medical records and they were sanctioned, but our position is that they engaged in more egregious conduct than just not reviewing medical records. The parties also cited some of the deposition testimony of some of the players. Not everybody was asked in their deposition what they would do. So I think we have two members of the PCC saying one thing, one member of the PCC saying another. A member of the board of directors saying agreeing with the AANS on that issue. You take the view that the two bases of censure could not be independent such that assuming there's an error on one that the other leg of the stool, so to speak, would not sustain censure on this record. And if so, what's the basis of necessarily saying that if there's an error on one that so taints the other one that assuming that we can affirm on any basis that the record supports that necessarily if there's enough to support of the leg that's drawn that... Well, I have a two-part answer to that question, Judge. The first is that the entire procedure was tainted by the due process violation. Again, referring back to Hatley. Hatley said the conclusion is tainted by the procedure used to attain it. But more to the basis of the censure. Well, let's briefly explicate on that. I mean, it's a pretty far-reaching statement to make. I'm not unsurprised you make it, but why is it so poisoned? Because the due process violations were not just limited to censuring Dr. Barish for engaging in this improper advocacy notion. We've also argued in our brief that Dr. Barish's due process rights were violated because he was not given a copy of this smoking gun X-ray prior to the hearing. And if we have to establish that, if we have to look at the two violations... Okay, he wasn't given a copy of it. He says, I didn't have it, but I didn't need it. In my opinion, it's what it is. So, no, I didn't have it, but I didn't need it. Had I looked at it, my opinion would have been the same. Well, certainly that's what Dr. Barish said throughout the proceedings. But for the PCC hearing, Dr. Ruische had submitted the X-ray, which is the only direct medical record the PCC considered. Dr. Ruische submitted the X-ray to the PCC before the hearing. Under the guidelines for the PCC and the bylaws, that X-ray should have been provided to Dr. Barish before the hearing. It was not, and that's uncontradicted. So, Dr. Barish, the first time he saw that X-ray, this smoking gun evidence, was when he walked into the PCC hearing. Which is part of the claim about his opinion, that he didn't get the X-ray to make it a part of his very opinion to start with. So, he didn't get it to form a part of his opinion. He makes an opinion. Yes. It's not shown to him until later, and he says, gotcha. You didn't show it to me until the end. But I didn't need it to start with to make the very opinion about which this whole deal goes. So, it seems like, okay. Dr. Barish didn't need the X-ray to form his opinion. He testified in his deposition. But if you're gonna use that as a basis to censure me, you gotta give it to me before the hearing. Exactly, because he didn't realize, until he walked into that hearing, that this X-ray was gonna be shown as a smoking gun evidence against him. But when he saw it, he didn't change his opinion, did he? Even though he didn't change his opinion, we can all understand the unfairness of not being given evidence before a hearing begins. He could have had that X-ray, taken a look at it, and said, this X-ray is misleading, or this X-ray shows what it shows. I need to come up with a defense to the X-ray. All right, well, let me stop, because I don't mean to take all your time on that one point. But where I started you off on was persuading me how his not seeing the X-ray, which he said he didn't need, and which was not part of his opinion, so tainted. So, assume error, you know, he should have got it. But you're sort of overarching was that this was such, you know, a piece of evidence. In some other situations, we can say, this is the key piece of evidence. You know, everything else falls. So, why here, and that's why I started asking you, why isn't it that the second leg of the stool, for example, wouldn't support the center underneath? To go back to that question, both the PCC, the Board of Directors, and the ANS membership evaluated Dr. Barish's opinions as a whole. Both the PCC report and the letter from the President to the members said, we evaluated Dr. Barish's testimony as a whole. He had some good things to say about Dr. Ruische. He had some bad things to say about Dr. Ruische. As a whole, we think that this was unprofessional testimony worthy of a censure. And, in fact, in the President's letter explaining why they reduced the recommended penalty of a suspension down to a censure, they said, we downgraded the recommended penalty to a censure because we viewed his testimony as a whole, and thought, as a whole, it was worthy of a censure, not a suspension. So why isn't that supportive of the censure alone? If he didn't need the X-ray, there's no prejudice from his own testimony that he didn't get it. He says, well, I didn't need it, so that ground us out, even though it may have been a due process violation. Why isn't the censure supported completely by the unbiased testimony? Well, Your Honor, I'd like to point out that if he had had the X-ray before the PCC hearing, he could have better prepared a defense of the charge. Well, he didn't, you're saying that, fine, but he didn't say that. We have to look at the record that we have. And the record that we have, he said he didn't need it. He said he relied on other medical records to come to his conclusion, and if he'd known that this X-ray was gonna be such an important piece of evidence at the hearing, he might have brought along the other pieces of evidence, the medical records that he relied on to say, well, look at this operative report that shows the bone graft was misplaced. Look at the report of the subsequent X-ray, which didn't show that the bone graft was misplaced, and a subsequent, I think it was a CT, that did show it. And so you can see that the X-ray wouldn't have shown the misplacement of the graft. Could he have brought an expert to rebut it or anything? I don't think that there's anything in the PCC rules or guidelines that say you can't bring in an expert. I think that they say you can bring in a witness. I don't think there's any prohibition against. So he could have brought in somebody to explain why an X-ray isn't as good as what he had? I see no reason why he. But he didn't argue that. Did you argue that to the district court? We did not argue in the district court or in the appellate court that he could have or should have brought in an expert or that he was precluded from bringing an expert. But the censure itself is a pretty severe penalty. So what evidence is there in the record that someone else would have gotten the same, would have gotten this penalty for just that violation? The evidence is three of the, four of the witnesses were asked that question at their depositions, three PCC members and the president of the AANS. And the party submitted four PCC reports, two by the AANS, two by Dr. Barish. Dr. Barish's reports show examples of two doctors who were found to have not reviewed medical records and the charges against them were dismissed. The two reports submitted by the AANS for Dr. Momplam and Dr. Payne, part of the PCC report discusses the fact that they didn't review medical records, but if you look at the PCC reports, they were found guilty of more egregious conduct in addition to not reviewing medical records. I thought he was sanctioned for signing the affidavit. One of them was sanctioned for signing an affidavit that an attorney drafted and it apparently, the PCC doubted that the expert had even read it before he signed it. So is there an example in this record of someone who was censured in the same way for just doing what your client did? No, Your Honor. Is there any comparable example? No, Your Honor. We cited the examples of Dr. D and Dr. S. We have to honor the protective order showing that the charges against them were dismissed for not reviewing pertinent medical records. All right, Mr. Blavsky, you've reserved a chance for rebuttal. Thank you. Thank you, sir. All right, let's hear from Mr. Norse. May it please the Court, Josh Norse of Jones-Walker on behalf of the American Association of Neurological Surgeons. Joining me today is Mike Jabrai with Better Price and Brett Chinaman with Jones-Walker. What ties all of these issues together is the real issue that this case presents to the Court, which is what is the role of courts in general in Texas in reviewing these associations' proceedings, their decisions, their discretion, and their judgment? The law is clear and well-established. In Texas, courts don't interfere, except in that rare case where there's been no due process given, or where there's been a showing of bias, ill will, bad faith. That was Hatley. That was this Court's decision in 1977 in the Hatley case. The Court there was clear. There was absolutely no due process given. And the record was complete there that there was bias shown. Here, abundance of due process. We may be able to go back and say maybe it wasn't exactly perfect, but an abundance of due process. But Judge Ellison thought there was a problem with lack of due process with respect to failing to physically hand over the x-ray before the hearing began. So how do you evaluate his judgment call? Your Honor, there, I think Judge Ellison's ruling on the lack of due process came in whether Dr. Barish had notice of the fact that he was gonna be at a hearing and having to defend his impartial testimony position in his report. Well, that's what the hearing was about. I don't think that was his basis for finding the violation. And we believe that he was on sufficient notice of the fact that he was gonna have to defend his opinions in the case. And I think the case law in Texas, the Bullard case, for instance, says it doesn't have to be an exacting requirement of particularized pleading that Judge Ellison required. Judge Ellison looked at the specific fact of did Dr. Barish know that he was gonna be on trial, so to speak, at this hearing for his impartial testimony opinions? How do you distinguish the Masonic Grand Chapter case? Your Honor, the Masonic Grand Chapter case is the old, somewhat old case. I think it was in the 30s or 40s. 1959. 1959, where there was a member who acted out at a series of meetings and was put on trial on hearing that very afternoon. And I think what the court came down and said is that that's not due process. There was no way that that member had an opportunity to prepare for a hearing, and not being able to prepare for a hearing is no hearing at all. Here, however, Dr. Barish was put on notice months and months in advance. And let's not forget, he had the opportunity to respond to the charges in writing. He had notice of the hearing months in advance. The x-ray that y'all were talking about with Mr. Belofsky, specifically, a letter was sent to Dr. Barish that said, hey, we've gotten this x-ray. We'll be able to view it at the hearing. And in fact, he was able to view it at the hearing. At the hearing, he was represented by counsel. His counsel, the record is undisputed, is not only a lawyer, but also a neurosurgeon. There was his expert. Why didn't he? Call him? I'm sorry? He couldn't call us. That would have been confusing. Well, yes, Your Honor, but he had competent counsel who was not just a lawyer, but it was a neurosurgeon. And if- Can I ask you a question? Does this organization, is it in the record, did they go after people that testify on both sides of the docket? Because I'm only aware of them going after people that testify on the plaintiff's side of the docket. Your Honor- I'm not aware of any cases that we've had in this court. And I'm just curious, is this, is that in the record? If it's not in the record, then you can tell me it's not in the record. It is in the record. That evidence is in the record of the case. That has been an issue or a position that the plaintiff attempted to develop. We produced records from many other cases that the PCC has handled in the past five to 10 years. And Judge Ellison looked at that issue and said, I find no evidence of bias, ill will, bad faith on behalf of Redeville A&S. So you're saying that people who have testified for defendants have been punished and censured if their testimony was not based in truth in this, does it say that in this record? Your Honor, I can't point you exactly to, I can point you, in the record there are cases that exist in which those testifying on behalf of defendants have been investigated and charges have been brought and there have been hearings. Okay. I can't specifically invite you. Tell us what punishment they get. That's right. Okay, well, assuming, arguendo, that we agree with you, and this is really arguendo, I'm not speaking for the court by any means, about the breach of contract, that that's too delving into the matters of the organization but that we don't agree that it's inappropriate for courts to maintain minimum due process standards. Can you tell me how this case shakes out if, I've got kind of three different ways of the burden and the proof and what happens, and I'm trying to figure out what happens under each. If you bore the burden to show that it was harmless error, did you establish that and what result, if you didn't or did? Your Honor, it is, it is harmless error, two reasons. One, if you look at the record as a whole, it demonstrates that there was a basis to uphold the censure. Under the law in Texas, that's the end of the inquiry. That takes the censure out of the realm of being arbitrary and capricious because it was a reasonable basis and the judges. Even if he's the only one who's ever been censured for this in the history of the organization? If that were true, my answer would be yes. But I think as the question. Your answer would be yes, would it be? My answer is yes. Even if that was the first time that that had ever occurred, my answer would still be yes, it's an appropriate remedy that lies within the discretion of the association. Okay. As Mr. Bilofsky referenced, there are four separate cases where, that are now in the record, that were argued in the briefing. Two, Mr. Bilofsky maintains, are situations where others have not been punished the same as Dr. Barish. But a careful look at those, and I think, again, now we're delving into the substantive matters behind the curtain, so to speak. But in those other cases, those films, those x-rays, were not relevant to the medical procedure that was involved there. And so what now we're into, and I think this point demonstrates how important this non-interference doctrine is. And the assessment of an appropriate punishment has to lie with the association. And I think Judge Ellison said that, and struggled with this case for two years, really. And what is his appropriate role? And at the end of the day, he came down, and he's already told us, I'm not well-equipped to define the context and to assess a penalty, and that's really what Dr. Barish is asking today. Okay, so do we affirm, then, if it was harmless error? Is that, we affirm, what's the? Yes. I'm just trying to work it out, and is that what we do? I think so, Your Honor. Yes, it is. You can affirm our summary judgment, and you can affirm our summary judgment on any ground that was raised and supported by the evidence. What if we don't believe that you established harmless error? Then what result? Well, still, I think you can look at the substance of what Dr. Barish is complaining of creates the taint in the first place, which is the ground on which the Judge Ellison found there was a lack of due process on the impartial testimony ground. You can substantially review that now and decide that there was no taint at all, meaning that he got due process on the impartial testimony. Okay, what if we think it's not discernible whether or not, is the remedy to send it to the district court for damages, or is the remedy to vacate the whole thing and then let y'all start over? Well, the remedy would have been to send it back to the agency, or the association, to have a do-over. However, since this time, shortly after the appeals were denied by the association, Dr. Barish resigned, and so he's no longer a member of the association. So y'all can't have a do-over because you don't have any jurisdiction over him. Is that the situation? That's right, by his volunteer. That remedy, that's out. That's right, yes. So it's whether or not he gets to go back for his damages before the district court is the only thing on the table, or else whether the decision is affirmed, correct? Yes, Your Honor, but I think to answer your question completely is there would have to be a determination first that he was able to, that allowed us the opportunity to say that he would have been censured. How does that happen? Well, that's the problem, I mean. That's what Judge Ellison said. There's no way, how do you go back to do that? Well, and Your Honor, I think the only way physically to do it is to call in the members of the PCC and the board and those who voted on this in the first place, and ask them what they would have done. That's what you're doing in your brief. In your brief, you're relying on the depositions of the directors, but what about all those at-large members who also have a vote? How can you say that the censure would be supported on one ground, even though one was vacated? What's your support for that? Well, that's my. It's more like a guess or a wishful thinking kind of. Certainly, it is, and that's why the law says it's their discretion. Well, let me finish answering Judge Clement's question completely, and then at some juncture, I have a question. Your Honor, I think that's why Texas law sets up this situation where we can't do this. We can't peek behind and go guess what they were going to do. But that's what you're arguing in your brief. Well, we had to rebut their position that no one had ever been censured for this similar type of conduct, and so we had to take that information and put it before this court to show, we shouldn't be looking at that. This is outside the inquiry, but at the end of the day, that's fundamentally not the whole picture. And so, at the end of the day, I guess to answer your question is, all of these reasons and all of these difficulties is why the law is so strong on this issue. And in Hatley, this court said, you got the stiff arm, you got nothing, and there's evidence of bias, and so we're gonna take it away from you. On every other case that's interpreting Texas law, besides the Sweatt case, but I feel there too, courts looked and said, did you get notice of that you're gonna be, your membership's at stake? And did you get notice there's gonna be a hearing? And did you get to go to that hearing? And although that hearing might not have been perfect, there might have been some technical violations of your own internal guidelines, we're not gonna look at that. All right, let me stop you there, because I feel like the answer's gonna go for a while. Let me get my little question in. Let me just rewind on process. Okay, we're here on the summary judgment, right? Yes, sir. All right, I mean, we got your overarching argument about deference, hands off, et cetera, you know, and all that, we got that, but just leave that to the side, it's here. And let's say if it was a case of perfect everything, then we'd go with the whole deference. But let's just say, you know, we got our secondary approach. If it's not a facial showing of perfect due process, then we drop down out of the wholesale deference bit and look at it. So we're in a rule 56 posture, right? All right, so sometimes in these kind of situations where we've got this back and forth, the question becomes is summary judgment appropriate here? So my first question to you is, you know, both sides agree. This is a summary judgment case, it's just a matter of who prevails. Or, you know, is there other evidence? These other members, et cetera, instead of us doing the nuance here, is this really something that should have been tried? You know, on these issues, burden of proof, depositions, the whole nine yards, because that's a threshold question we often ask in a summary judgment. If you're going that back and forth, maybe it's not clear that you're entitled to judgment as a matter of law. So I'm asking kind of a process, but is there more evidence, or all these depositions, is this the whole ball of wax? There's nothing else that could, even if there were a trial, there's not other evidence hanging out there. And Your Honor, I guess it would be, depends on what we're gonna try. But if we're going to try the, what would the PCC have done? What would the board have done? What would all of the members have done? Certainly we'd have to bring in a lot more people and have quite a show of neurosurgeons at their hourly rates. So that's where we believe we don't need to go. I didn't hear him arguing for a trial. That's why I posit that, well, you know, some of the parties agree. No, it's just a matter of who ought to win here, but nobody's arguing for a trial, you know, that there are undisputed facts. So within that, my question, are there any genuine issues of fact that are disputed? Because we've got it on summary judgment, ordinarily we say we construe the summary judgment, you know, in light of the non-movement who's him. So I'm trying to make sure process-wise, you know, we just need to go de novo, look at this record and decide for ourself, as opposed to part of the question you're getting over here about, well, if remand, what then? You follow me? Yeah, I do, Your Honor. And I think there could have been at one point potentially a fact issue as to the damages, and could it be apportioned? But Dr. Barish admitted to Judge Ellison, and during that hearing, I think in the evidence, that he couldn't disentangle the damages. And so we've gotten past that now, I believe, based on that admission. And so that was really what took off the table, the damages issue, at the end of the day in front of Judge Ellison. And so even as to that, I think we're now past, we're in as much for summary judgment as appropriate content. So there are no disputed fact issues that would warrant a trial, unless we went down the road of calling every member, is that kind of? I have to agree with that. That's kind of what you're saying. So it's on this de novo record, basically, procedure-wise, right? So if you're talking about remand, for part of it or whatever, we're not talking about it in the context of the typical disputed fact, but whether or not the due process problem permeates enough that some further review is warranted. Okay, well, just one other question while I got the mic. Why in this case, if it's wholesale due deference, sort of like in the criminal context, you, the DA, just hand over the whole file to the other side, in the sense of this depo, notwithstanding him said he didn't need it, then you got a clean deal, we gave it to him, we're giving him the whole bottle of wax because we're going for this ultimate censure. In other words, why isn't it, with the gravity of the penalty, censure, and the relatively, I guess, minimal times it's offered, why didn't that warrant, here's sort of a, here's the whole file, we're gonna be coming at you on this because we're going after this ultimate penalty? Yes, Your Honor, and let me answer both parts of that. First of all, the x-ray is an x-ray, large x-ray, film, every time, this evidence is undisputed, it's in the record, every time you recreate it, it becomes less, you can't see the details as well. And so, hence the letter six weeks before the hearing to Dr. Barish to say, we're gonna have this x-ray at the hearing with a viewing box. And so, at that point, he was represented by counsel. If he needed that x-ray, he easily could have requested it. The case law, again, speaks to this issue, and it's very clear that, hold on a second, you're saying that that smoking gun, that rose to the level of you not being prepared for this hearing, but you didn't ask for it? But the rupture just didn't even show up on the x-ray, did it, it was on the CT scan? That's correct, Your Honor, but that goes to, was it pertinent? And was it needed to come to his opinion? And obviously, Dr. Barish has maintained throughout that he didn't need it. But the six board-certified neurosurgeons on the PCC disagreed with that. And the 11 board members who are neurosurgeons disagreed with that. And I don't know, myself as a lawyer, was it necessarily pertinent? I don't know. And I think that's the exact reasoning behind why Judge Ellison struggled with this role and why the courts have expressed this clear principle that we're not supposed to be making those decisions. Those stay with the PCC. They stay with the trained neurosurgeons about whether that x-ray was that important to become pertinent. And they all said that it did. All right, let me ask you a question. I know you're winding down. It's sort of a question I ask counsel opposite, because maybe there's a case on it and I hadn't seen it. There were two bases for the censure. Assume arguendo, you know, one of them is tainted because of due process, then you've got the other. Is there a case, or what's the strongest argument or the best case that would say, now we're standing a problem with this one prong of the censure, that the other censure is sufficiently independent, strong enough, or whatever, that it would support affirming this? Your Honor, there is not a case on all fours. However, the cases that, Hatley included, but all the Bullard case, the Whitmire case, the Burge case, the Adams case, all stand for the proposition that when you look at this record in its entirety, we're not going to delve into whether there was one or 10 bases. One is enough to support the reasonableness of the censure. When tethered to your general difference. Yes, Your Honor, that's true. Mm-hmm, I thought that's what you were, I thought that's what you were trying to take. Your Honor, I see I'm out of time, so unless there's any other questions. You just think I gotta follow up to that question, that's all right. No, thank you, we appreciate it. Did you try to, were you trying to counsel? I'm sorry? Were you trial counsel? Yes, sir. Okay, all right, we appreciate your answers to our questions. Thank you. All right, Mr. Belofsky, you've saved some time for a vote. First, I'd like to respond to one of Judge Elrod's inquiries about the record, about what is in the record, about what has happened in other cases. There are interrogatory answers by the AANS discussing how many cases they've had, and so on and so forth, and that is document 78-5, starting at the record at page 2302, and there's also a reproduction of the ANS's publications of some of its sanctions against other members, that's document 78-4, that begins at page 2240 of the record to answer your question about what's in the record about that. Do we have a closed record that we can review de novo, or if we were to agree with you that there might be some taint, is there a fact issue on whether or not your client would have gotten the same censure, and if so, does that open it up for this trial, where everybody has to call these members? Well, I think that the issue of whether or not a censure was appropriate based on this fact pattern may indeed be an open question, and I go back again to the Hatley case, where the Fifth Circuit in that case held that that they couldn't remand the case back to the American Quarter Horse Association because of all the emotion that had been engendered by litigation, and it held that the district court was equipped to make the decision about whether or not the horse should have been registered, and therefore remanded the case for hearing to determine whether or not the horse in that question should be registered, and I think that in this case, the district court is very well equipped to evaluate Dr. Barish's expert testimony and to determine whether or not it should be censured, and we offered in the district court, we offered expert testimony on the two issues, the two medical issues, the chronic pain issue and the x-ray issue, and the district court did not consider it, and on remand, I think it would be appropriate for the district court to consider expert testimony on the role of an x-ray, how diagnostic it is. Well, let me stop you, because I'm still mixed up here on process. For your client to win, do you need a plenary ruling from us vacating the district court's judgment such that the censure is wiped out as part A, and it comes back to an earlier question Judge Elwood asked you, like what's the relief you're seeking? Or when you start talking remand to do this and that and the other, you know, are you talking about a trial? Are you talking about a remand with instructions from this court to the district court, and if so, what's the basis of us doing that, and what instructions are you talking about? Because you sound like you're talking about a hybrid between ordinarily if we say there's a genuine issue of material fact, we send it back. You know, we say the party was not entitled as a matter of law, the genuine issue is a material fact, go try it, versus summary judgment was correct, but there's this issue, so we're remanded with instructions, trial court for you to do one, two, three, four. Is that what you're advocating? If so, what's the basis for it? I think the record is very clear in this case that if Dr. Barish had only been found guilty of not reviewing the intraoperative x-ray, he would not have been censured. The basis for that is the other PCC reports. What if the record's not clear on that? If the record is not clear on that, then I think we have to follow what happened in the Hatley case, and remand the case back to the district court to make that determination itself. The district court, I think, is well-equipped to do so. Remand it back to the district court to redo its summary judgment proceeding? Is that what you're saying? No, to redo the penalty, to redo whether or not Dr. Barish violated rule B two by not reviewing the x-ray, and if he was guilty of violating that, to determine what the appropriate sanction is. But we submit that he didn't violate rule B two, and that if he did violate rule B two, no censure would be afforded. We remand to the district court to say, reconsider what you did. Is that what you're saying? Judge? No, I'm really trying to be real clear. I hear what the word's coming out, but it's not fitting into anything. You want us to, we've got it on the no-vote review. This is not a clear error, deference to the trial court. We got it on summary judgment. It's the no-vote. The record's here. So we could, A, ordinarily look at this record. That's why we're asking, what's in it? We could look in this record and make the call from here, as opposed to you seem to be asking for some kind of hybrid to say, well, for us to make a determination, as a matter of law, that there was a due process violation that so permeated the proceedings until we vacate the judgment. So then what? You want us to then remand to the district court, say, reconsider in light of X? Is that what you're asking, or do you want a trial? Your Honor, to answer the question, the district court took a very narrow view of what remedies it could award. This is a de novo review of summary judgment, and this court could take a different view, and on summary judgment, award Dr. Barris the relief he is seeking, which is to vacate the entire censure and remand the case for damages. So you want plenary relief from the three of us? That is what we asked for in summary judgment, and we believe that. You want us to vacate the district court's ruling, judgment, not its reasons, but vacate the judgment based on an error of due process of sufficient magnitude such that the judgment cannot stand, and based on that, for us to give you plenary relief on the censure? Yes. But do you want alternatively a remand for the court to consider whether or not the censure was an appropriate remedy for the alleged conduct at issue? Of course. Now what's the best case you've got, A, for the yes answer to me, and B, the of course answer to Judge Elrod? The best case I have for awarding plenary relief is Masonic Grand Chapter of Order of Eastern Star versus Sweatt, where the appellate court vacated an expulsion order in a private association because the member was not given a reasonable opportunity to prepare her defense of the charges. Counsel said there was no process there, but you are saying, okay, that's what you say, okay. For the remand issue, it's Hatley, because in Hatley, there was a remand to the district court. Okay, and the best case for the court, the of course, the of course answer, is Hatley? It's Hatley. Okay. My time is up, thank you, Your Honor. All right. Thank you, counsel. It's an interesting case, to put it.